UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In the matter of:

    Bernard Sloane Glieberman,                 Case No. 15-55996-MBM
                                              Chapter 7
_____Debtor.___/     Hon. Marci B. McIvor
Charles J. Taunt, Trustee,

            Plaintiff,

v.                               Adv. Pro. No. 17-04751

Tracey Katzen, Lonie Glieberman,
Sandra Glieberman, Lontray Enterprises, LLC
Home Renewal Systems, LLC, Home Renewal Realty, LLC,
Londonberry Residential, LLC, Clyde Smith Farms, LLC,
TK001, LLC, Clyde Smith Farms Condominium Association,
FGHRR, LLC, Fremont Gateway Limited Dividend Housing
Association Limited Partnership, Gateway-Fremont
Developer, LLC, GMHRR, LLC, Grandview
Marquette Developer, LLC, Grandview MT LLC,
600 Altamont Limited Dividend Housing Association Limited
Partnership, Home Renewal Realty Georgia, LLC,
HRS Communities, LLC, HRS Funding, LLC,
HRS 1968  Stanley, LLC, Smart Growth America,
TK002, LLC, TFKR, LLC, 208 King Limited
Dividend Housing Association Limited Partnership,
and BVHRR, LLC, and John Doe Entities 1 through 30,

_____Defendants._____/

**OPINION GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTIONS TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)**

Defendants Lontray Enterprises, LLC, Lonie Glieberman, Sandra Glieberman, Tracey

Katzen, and all the remaining Defendants have filed four separate Motions to Dismiss Plaintiff

Trustee's Amended Complaint.  For the following reasons, Defendants' Motions are DENIED

with respect to Counts I - V, VII, IX - XXI, and XXIII, and the Motions are GRANTED with

respect to Counts VI, VIII, and XXII.

I.

FACTUAL BACKGROUND

A.     Debtor's Use of Lontray for Business and Personal Purposes

In 1999, Debtor Bernard Glieberman organized Lontray Enterprises, LLC ("Lontray") as

a limited liability corporation. (Adv. No. 17-4751, Docket No. 65, Exhibit B, pp. 327-331,

Exhibit E, pp. 32-39, Exhibit F, p. 14). Debtor's children, Tracey Katzen and Lonie Glieberman,

each own 49% of the shares of Lontray. Debtor and his wife, Sandra Glieberman, each hold a

1% interest in Lontray. Lontray does not operate a business and its assets are its membership

interests in other entities controlled by Debtor. (Docket No. 408[1], Exhibit 2, p. 95). Lontray's

operating agreement provides that all Lontray's net cash flow shall be distributed "as often as

shall be deemed prudent" to the members, according to their membership percentages. At all

times relevant to this Opinion, Debtor was the sole manager of Lontray and exercised control

over the money that flowed into and out of Lontray. (Adv. Proc. No. 15-5382, Docket No. 81, p.

2; referenced in United States District Court, Case No. 13-mc-50297, Docket No. 395, Opinion

and Order, p. 5).

Shortly after the formation of Lontray, Lontray joined with two other entities, Trident-

Brambleton, LLC and PPR No. 1, LLC to form Brambleton Group, LLC. (Docket No. 410,

Exhibit D). Brambleton Group, LLC was formed for the purpose of purchasing 2,007 acres of

land in Loudoun, Virginia. (Docket No. 410, Exhibit D). The land was subsequently developed

---

[1]The docket numbers referenced in this Opinion are in Bankruptcy Case No. 15-55996,
unless otherwise noted.

2

as a master plan real estate development. (Docket No. 408, Exhibit 3, pp. 327, 330). In August

2006, Trident-Brambleton owned an 85% membership interest and Lontray owned a 15%

membership interest in Brambleton Group, LLC. (Docket No. 410, Exhibit E). Lontray's

interest in Brambleton was profitable. From 2007 through 2016, Brambleton Group, LLC issued

K-1's to Lontray showing that Brambleton distributed the following amounts to Lontray as

ordinary business income:

| 2007 | $11,135,250 | 2012 | $10,200 |
| 2008 | $750,000 | 2013 | $633,750 |
| 2009 | $5,172 | 2014 | $11,674,140 |
| 2010 | $28,646 | 2015 | $1,600,000 |
| 2011 | $1,355,000 | 2016 | $2,285,333 |

(Adv. No. 17-4751, Docket No. 66, Exhibit 1). Neither Tracey Katzen nor Lonie Glieberman

ever contributed money or labor to Brambleton Group, LLC. (Docket No. 408, Exhibit 3, p. 327,

331; Docket No. 410, Exhibit B, p. 94).

On September 17, 2007, Debtor and his wife Sandra Glieberman granted a mortgage on

their residence at 5050 Greensward Court, West Bloomfield, Michigan ("the residence") to their

daughter Tracey Katzen. (Proof of Claim No. 26). The mortgage was granted to Tracey Katzen

to secure a $500,000 line of credit. *(Id.)* The mortgage provided that the line of credit would be

repaid in full on or before July 1, 2010. *(Id.)* The line of credit was never repaid. Tracey Katzen

has never taken any action to foreclose on the property. *(Id.)*

In 2006 and 2007, Debtor used money that had flowed into Lontray to fund various

business ventures. (Lontray's Proof of Claim (Claim No. 15), attachment no. 5; United States

District Court, Case No. 13-mc-50297, Docket No. 396, Opinion and Order, p. 4-7). One of

3

these business ventures was Tay Land, LLC, a holding company for development projects outside of Michigan. (Adv. No. 17-4751, Docket No. 65, Exhibit A, pp. 21-22). Tay Land was at least partially funded with a $5 million line of credit from Lontray. As collateral for the line of credit, Debtor pledged his interest in real estate in Merced County, California to Lontray. In 2008, Tay Land, LLC needed additional funds, and Debtor needed the Merced real estate as collateral for a loan from some entity other than Lontray. To make sure that the Merced real estate was not encumbered by any interest of Lontray, Debtor replaced Lontray's interest in the Merced real estate by giving Lontray stock in a Debtor-owned company, Digital Image, LLC.[2] All documents related to this transaction are signed by Debtor as "Manager" of the borrower Tay Land, LLC, "Manager" of the Lender Lontray, and "shareholder of Digital Image, Inc.". (Lontray's Proof of Claim (Claim No. 15), attachment no. 5; United States District Court, Case No. 13-mc-50297, Docket No. 396, Opinion and Order, p. 4-7).

On June 17, 2008, a UCC Financing Statement was filed with the Michigan Secretary of State stating that Lontray Enterprises, LLC was a creditor of Bernard Glieberman. The collateral was listed as "[a] pledge of Bernard Glieberman's stock in Digital Image, Inc." (Lontray's Proof of Claim (Claim No. 15), attachment 5). Lontray never sought to enforce an interest in the Digital Image stock until a creditor (BR North) attempted to obtain the stock as part of its efforts to collect on a judgment BR North held against Debtor. (United States District Court, Case No. 13-mc-50297, Docket No. 396, Opinion and Order, p. 20).

Debtor also used Lontray to pay his personal attorneys, Elias & Elias. Specifically, in

---

[2]The details relating to Debtor's unsuccessful attempt to transfer his stock in Digital Image, LLC to Lontray, LLC, are fully detailed in this Court's Opinion Denying Defendants' Motion for Partial Judgment on the Pleadings. (Adv. No. 15-5382, Docket. No. 81).

December 2007, Debtor had an outstanding obligation for legal fees to Elias & Elias in the amount of $125,000. Rather than paying this bill directly, Debtor directed Lontray to write a check to Tracey Katzen for $125,000. That check was issued on December 26, 2007. Tracey Katzen subsequently endorsed the check to her father, Bernard Glieberman. The endorsement on the back of the check reads, "Pay to the order of Bernard Glieberman". Underneath that endorsement, the endorsement reads, "Pay to the Order of Elias & Elias for legal fees". (Docket No. 381, Exhibit A, Deposition Transcript and Check).

On or about January 16, 2008, Debtor and his wife Sandra Glieberman granted a second mortgage on their condominium in Bay Harbor, Michigan to their daughter Tracey Katzen, in the amount of $150,000.[3] Debtor and his wife granted the mortgage to Tracey Katzen in consideration for the payment of the legal fees referenced in the previous paragraph and an additional $25,000 allegedly loaned by Tracey Katzen to Debtor. The second mortgage was granted to Tracey Katzen even though the source of the $125,000 payment was Lontray. (Docket No. 381, Exhibit A, Deposition Transcript and Check). Debtor has never made any payment to Tracey Katzen on the second mortgage. (Docket No. 381, Exhibit A, Deposition at pp. 221-227). On or about August 27, 2012, Tracey Katzen paid off the first mortgage on the Bay Harbor condominium, remitting $295,000 to mortgage holder New York Community Bank. (Docket No. 407, Exhibits L, N; Proof of Claim No. 25, Exhibit B). The source of these funds is traceable to Lontray. Specifically, in July 2012, $3,450,000 was deposited into Lontray's bank account at Chase Bank. (Docket No. 407, Exhibits J). On August 8, 2012, Lontray issued a

---

[3]Debtor and his wife Sandra purchased the condominium located at 3200 Cliffs Drive, Bay Harbor, MI at some point around 2003. The first mortgage was originally held by Affordable Mortgage, LLC. The mortgage was subsequently assigned to New York Community Bank on May 12, 2011.

5

check to Tracey Katzen in the amount of $1,240,004.31. (Docket No. 410, Exhibit K). On August 27, 2012, Tracey Katzen paid off the first mortgage. (Docket No. 407, Exhibit N; Proof of Claim 23, Exhibit B) and the note and mortgage were assigned to Tracey Katzen. As a result of the assignment, Tracey Katzen held both the first and second mortgages on the Bay Harbor condominium. Debtor never made a payment to Tracey Katzen on the mortgage or note. (Docket No. 381, Exhibit A, p. 56).

B.     The Katzen Entities and the John Doe Entities

Beginning in approximately 2007, Tracey Katzen started filing Articles of Incorporation or Certificates of Limited Partnership for multiple companies. Specifically, she filed documents for the following entities:

1.     Home Renewal Systems, LLC;

2.     Home Renewal Realty, LLC;

3.     Londonberry Residential, LLC;

4.     Clyde Smith Farms, LLC;

5.     TK001, LLC;

6.     Clyde Smith Farms Condominium Association;

7.     FGHRR, LLC;

8.     Fremont Gateway Limited Dividend Housing Association Limited Partnership;

9.     Gateway-Fremont Developer, LLC;

10.     GMHRR, LLC;

11.     Grandview Marquette Developer, LLC;

6

12.     Grandview MT, LLC;

13.     600 Altamont Limited Dividend Housing Association Limited
        Partnership;

14.     Home Renewal Realty Georgia, LLC;

15.     HRS Communities, LLC;

16.     HRS Funding, LLC;

17.     HRS 1968 Stanley, LLC;

18.     Smart Growth America;

19.     TK002, LLC;

20.     TFKR, LLC;

21.     208 King Limited Dividend Housing Association Limited Partnership;
        and

22.     BVHRR, LLC.

These entities will hereinafter be referred to as the Katzen Entities. The Trustee believes that

there may be multiple other entities in which Debtor has an interest. In order to preserve the

Trustee's right to recover from any entity which the Trustee has not yet discovered, the Trustee

named the John Doe Entities 1 through 30 ("the John Doe Entities) as defendants.


C.     Litigation Between Creditor BR North and Debtor

        In March of 2012, BR North 223, LLC ("BR North") obtained a default judgment of

$81,170,331.74 against Debtor and the Glieberman Revocable Living Trust in the United States

District Court for the Eastern District of California.

        On February 26, 2013, BR North registered the California Judgment in the United States

7

District Court for the Eastern District of Michigan, under the caption of *BR North 223, LLC v. Glieberman et. al.*, Case No. 13-mc-50297 (hereinafter referred to as the "Glieberman Collection Action"). (District Court Case No. 13-mc-50297, Docket No. 340, at 1). On March 3, 2014, BR North filed a "Joint Creditors Emergency Motion to Seize and Transfer all Shares of Certain Stock Held by Debtor [Bernard Glieberman] in Aid of Collection of Judgment" (the "Turnover Motion"). (District Court Case No. 13-mc-50297, Docket No. 396, at 2-3). The Motion requested that Bernard Glieberman turn over all shares of stock in a company known as "Digim" or "Digital Image LLC" to BR North in partial satisfaction of its Judgment against Glieberman. (*Id.*, at 3-4).

On November 24, 2014, BR North filed a six count complaint against Bernard Glieberman, Sandra Glieberman, Lonie Glieberman, Lindsey Bobay Glieberman, Jeffrey Katzen, Tracey Katzen, Black Bear, Inc., Lontray Enterprises, LLC, Digim Inc. f/k/a Digital Image, Inc. and Digital Image, LLC in Federal District Court for the Eastern District of Michigan (Case No. 14-cv-14488)(hereinafter referred to as the "Fraudulent Transfer Action"). The first three counts of the complaint alleged that Glieberman had fraudulently transferred the assets of Black Bear, Inc., a ski resort operating as Mt. Bohemia located in Michigan's Upper Peninsula, to his son Lonie Glieberman. In Counts IV-VI of the Complaint, BR North alleged that Glieberman's transfer of his shares in Digital Image, LLC f/k/a Digim, Inc. to Lontray, was a fraudulent transfer.

On March 30, 2017, *BR North 223, LLC v. Glieberman et. al.*, Case No. 13-mc-50297 was consolidated with *BR North 223, LLC v. Glieberman et. al.*, Case No. 14-cv-14488 (hereinafter referred to as the District Court Collection Action). The complicated history of the

8

Federal District Court litigation is fully detailed in this Court's *Opinion Denying Defendants'*
*Motion for Partial Judgment on the Pleadings.* (Adv. Case. No. 15-5382, Docket No. 81) and
this Court's Opinion Denying Debtor's Counsel's Fee Application (Docket No. 349).

D.     Debtor's Bankruptcy Filing

On November 2, 2015, in an effort to stall and delay the Federal District Court cases,
Bernard Glieberman filed a Chapter 11 bankruptcy petition.[4]

On December 9, 2015, Debtor filed an adversary proceeding against Lontray and Digital
Image, LLC.  In this adversary proceeding, Debtor sought a declaratory judgment that he, rather
than Lontray, was the sole owner of the stock in Digital Image, LLC.  (Adv. Proc. No. 15-5382).

On or about December 18, 2015, Tracey Katzen assigned the first and second mortgages
on the Bay Harbor condominium to Lonie Glieberman.  (Docket No. 410, Exhibit N).  Allegedly,
Lonie Glieberman paid Tracey Katzen $100,000 as consideration for the assignment of these
mortgages.  The documentation for this payment is a one-page bank statement from Tracey
Katzen's bank account at Chase Bank which shows a deposit of $40,000 on December 15, 2015
and a deposit of $60,000 on December 16, 2015.  (Docket No. 408, Exhibit 5).

On September 28, 2016, Lontray filed a proof of claim in Debtor's bankruptcy case in the
amount of $14,031,551.26.  (Proof of Claim No. 15).  The claim was amended on November 15,
2016 and January 24, 2017.  The basis of the claim is Lontray's alleged security interest in the

---

[4]There is nothing impermissible about filing a bankruptcy case to stay litigation in
another forum so that a debtor has breathing space to reorganize.  In this case, however, as fully
detailed in this Court's Opinion denying Debtor's counsel's application for fees (Docket No.
349), this Court has concluded that this case was filed without any ability or intention to
reorganize.

9

stock of Digital Image, LLC.

On December 21, 2016, Debtor's Chapter 11 bankruptcy case was converted to a proceeding under Chapter 7. Charles J. Taunt was appointed as the Chapter 7 Trustee.

On December 22, 2016, the District Court issued two opinions and orders in the District Court Collection Action. The first opinion and order granted BR North's motion to seize and transfer shares of certain stock held by Debtor (the Digim/Digital Image, LLC stock) and ordered Glieberman to turnover all shares of the Digim stock to BR North. (District Court Case No. 13-mc-50297, Docket No. 395). The second opinion and order issued by the District Court on December 22, 2016 denied Lontray's joinder motion (District Court Case No. 13-mc-50297, Docket No. 396). The District Court concluded that Lontray was not a necessary party to the Glieberman Court Collection Action because it had no interest adverse to that of Debtor Bernard Glieberman.

On January 5, 2017, the Trustee substituted in as Plaintiff in Debtor's adversary proceeding against Lontray and Digital Image, LLC. (Adv. Proc. No. 15-5382, Docket No. 17).

On March 13, 2017, Lonie Glieberman filed a secured claim in the amount of $727,010.96. The basis of the claim is stated as "Money Loaned - Line of Credit". (Proof of Claim No. 25). According to the claim, the loan is secured by the first and second mortgages assigned to Lonie Glieberman by Tracey Katzen. The collateral for the secured claim is the Bay Harbor condominium.

On March 27, 2017, Tracey Katzen filed a claim in Debtor's bankruptcy case the amount of $1,141,354.94. The basis of this claim is the mortgage held by Tracey Katzen against the real property located at 5050 Greensward Court, West Bloomfield, Michigan with all unpaid interest

10

and unpaid mortgage payments. (Proof of Claim No. 26).

On May 10, 2017, the Trustee was substituted as Plaintiff in the District Court Collection Action against Lonie Glieberman, Sandra Glieberman, Tracey Katzen, and Black Bear, Inc. (District Court Case No. 14-cv-14488, Docket No. 52).

On May 19, 2017, the Trustee filed a motion in bankruptcy court for authority to compromise the bankruptcy estate's fraudulent transfer claims against Lonie Glieberman and an entity known as Black Bear, Inc. in the District Court Collection Action (District Court Case No. 14-cv-14488). The Trustee sought to compromise the fraudulent transfer claims for $125,000.

On May 24, 2017, the Trustee filed a motion for authority to compromise potential causes of action against Lonie Glieberman related to his secured claim against the Bay Harbor condominium. The Trustee proposed to settle all potential causes of action related to Lonie Glieberman's secured claim for $10,000.

On August 22, 2017, this Court held a hearing on the Trustee's motion for authority to compromise claims against Lonie Glieberman and Black Bear, and against Lonie Glieberman with respect to the Bay Harbor condominium. At the conclusion of the hearing, this Court granted the Trustee's motion to compromise the estate's claim against Lonie Glieberman and Black Bear, Inc. and denied the Trustee's motion to compromise claims against Lonie Glieberman regarding his alleged secured interest in the Bay Harbor condominium. (Docket Nos. 421 and 422).

On October 11, 2017, the District Court issued an opinion and order reversing this Court's order approving the motion to compromise the estate's claims against Lonie Glieberman and Black Bear, Inc. The District Court remanded the Trustee's Motion to Compromise the

estate's claims against Lonie Glieberman and Black Bear, Inc. to this Court. As of this date, the Trustee has not pursued another Motion to Compromise its potential claims against Lonie Glieberman and Black Bear, Inc. The estate's claims against Lonie Glieberman and Black Bear, Inc. are still pending in the District Court Collection Action. (District Court Case No. 14-cv-14488).

E.     The Instant Complaint (Adversary Proceeding No. 17-4751)

On October 31, 2017, the Trustee filed a twenty-three count Complaint against Tracey Katzen, Lonie Glieberman, Sandra Glieberman, Lontray Enterprises, LLC, twenty-two named entities in which Debtor may have an interest (the "Katzen Entities"), and thirty John Doe Entities in which Debtor may have an interest.

On November 1, 2017, the Trustee filed an Amended Complaint against the same entities. The twenty-three counts of the complaint are best grouped as follows:

1.     Causes of action against Lontray (Counts I-IV);

2.     Fraudulent Conveyance Actions against Tracey Katzen and Lonie Glieberman related to:

   a)     Fraudulent transfers made to Tracey Katzen and/or Lonie Glieberman by Lontray (Count V and VII); and

   b)     Fraudulent transfers made to Tracey Katzen and/or Lonie Glieberman by Londonberry Residential, LLC (Count XX and XXI);

3.     Statutory conversion claims against Tracey Katzen and Lonie Glieberman (Counts VI and VIII);

4.     Counts seeking to void the mortgages granted to Tracey Katzen and Lonie Glieberman against Debtor's residence and the Bay Harbor condominium (Counts XII, XIII, XIV, XV, and XVI);

12

5.    Causes of action related to the determination of whether the Katzen Entities and/or the John Doe Entities are alter egos of Debtor or should be substantively consolidated with Debtor (Counts IX, X, and XI);

6.    Causes of action against Sandra Glieberman (Counts XVIII, XIX);

7.    Causes of action requesting the equitable subordination of Tracey Katzen's and Lonie Glieberman's claims (Count XVII); and

8.    Miscellaneous counts relating to a preference action against Tracey Katzen and recovery of a Mercedes Benz (Counts XXII and XXIII).

On February 7, 2018, four different Defendants (or groups of Defendants) filed motions to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Those Defendants are: (1) Sandra Glieberman (Docket No. 31); (2) Lontray Enterprises, LLC (Docket No. 33); (3) Lonie Glieberman (Docket No. 35); and (4) Tracey Katzen and twenty of the twenty-two named corporate defendants (Docket No. 34). Clyde Smith Farms Condominium Association, Smart Growth America, and the thirty John Doe Entities did not file any responsive pleadings.

On February 8, 2018, a Clerk's Entry of Default was entered against Clyde Smith Farms Condominium Association and Smart Growth America.

On February 14, 2018, this Court entered an Opinion and Order in *Taunt v. Digital Image, LLC* (Adv. Proc. no. 15-5382). In the Opinion, the Court denied Defendants' Lontray and Digital Image, Inc.'s Motion for Partial Judgment on the Pleadings and granted judgment to Plaintiff Trustee. (Adv. Proc. 15-5382, Docket Nos. 81 and 82). The Opinion held that: (1) Debtor is the sole owner of the stock of Digim/Digital Image, LLC; (2) the Trustee may liquidate the business in which the stock is held; (3) all profits derived from the business since 2009 are property of the bankruptcy estate; and (4) Lontray does not have an enforceable security interest in Digim/Digital Image, LLC stock. (Adv. Proc. 15-5382, Docket Nos. 81 and 82). This Court's

13

ruling is on appeal to the United States District Court for the Eastern District of Michigan. (Adv. Proc. 15-5382, Docket No. 89).

On February 22, 2018, an Order of Default was entered against Clyde Smith Farms Condominium Association and Smart Growth America.

On March 21, 2018, Plaintiff filed responses to each of the motions to dismiss.

On April 4, 2018, Tracey Katzen, the Katzen Entities and the John Doe Entities filed a reply to Plaintiff's response.

On May 10, 2018, the Trustee filed an adversary proceeding entitled *Taunt v. Lontray Enterprises, LLC*, Adv. Proc. No. 18-4207 for the purpose of obtaining injunctive relief against Lontray. The Trustee then immediately filed a Motion for Preliminary Injunction as to Lontray Enterprises, LLC, seeking to prevent Lontray from dissipating the money it will receive from Brambleton.

On May 15, 2018, the Court granted the Trustee's Motion for Preliminary Injunction against Lontray and held that the preliminary injunction should remain in effect pending this Court's ruling on the Trustee's Motion for Summary Judgment as to Counts I and II of the First Amended Complaint filed in *Taunt v. Katzen, et. al*, Adv. Proc. No. 17-4751.

II.

LAW AND ANALYSIS

A.  Standard for Dismissal

Federal Rule of Civil Procedure 12(b)(6), made applicable to adversary proceedings in bankruptcy through Fed. R. Bankr. P. 7012(b), provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." A motion to dismiss pursuant to Fed. R. Civ.

14

P. 12(b)(6) operates to test the sufficiency of the complaint. The court is required to construe the complaint in the light most favorable to the plaintiff, and accept all well-pleaded factual allegations in the complaint as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Lewis v. ACB Business Servs.*, 135 F.3d 389, 405 (6th Cir. 1998). A court will not accept conclusions of law or unwarranted inferences which are presented as factual allegations. *Blackburn v. Fisk University*, 443 F.2d 121, 124 (6th Cir. 1974).

A complaint must contain either direct or reasonable inferential allegations that support all material elements necessary to sustain a recovery under some viable legal theory. *Lewis v. ACB*, 135 F.3d at 405 (internal citations omitted). A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)(rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic*, 550 U.S. at 555. "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id*. *See also, Association of Cleveland Fire Fighters v. Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).


B.      Overview of Plaintiff's Complaint and the Motions to Dismiss

The Trustee's Complaint in this adversary proceeding is sixty-seven pages and contains twenty-three counts. The Trustee's Amended Complaint, while lengthy and unwieldy, was necessitated by Debtor's lack of transparency about his assets and his income.

Debtor has been in the real estate business for decades.  It is undisputed that at least one of Debtor's business ventures, Brambleton Group, LLC, has been extremely successful. Brambleton Group, LLC has made substantial distributions to Lontray, and Lontray has, in turn, made substantial distributions to Tracey Katzen and Lonie Glieberman.  It is also undisputed that Tracey Katzen and Lonie Glieberman have never contributed their own money to Brambleton Group, LLC.

Notwithstanding the sums which have been paid by Brambleton Group, LLC (an entity formed by Debtor) to Lontray (an entity controlled by Debtor), when Debtor filed for bankruptcy, he listed his sole source of income as $4,000 per month from Londonberry Residential, LLC (a Katzen Entity Defendant), and $2,100 per month from social security.  On Schedule B (Schedule of Personal Property), Debtor listed an interest in nineteen entities, but claimed the value of his interest was $1.00.  (None of those entities are Defendants in this lawsuit.)  Schedule B listed Debtor's 100% share in two other entities, Digim, Inc and Digital Image, Inc., but listed the value as unknown.  Debtor's Schedule A showed two pieces of real property, his residence at 5050 Greensward Court, West Bloomfield, MI 48322 and his condominium in Bay Harbor, Michigan.  Debtor's Schedule D (Creditors Holding Secured Claims) showed those properties as fully encumbered by mortgages granted to Debtor's daughter, Tracey Katzen.  The mortgages on the Bay Harbor condominium have since been transferred to Lonie Glieberman.

Given Debtor's long history in the real estate business, his bankruptcy pleadings raised questions for the Chapter 7 Trustee.  Specifically: (1) what happened to all of Debtor's assets and income between 2007 and the present date? and (2) are there assets that could be liquidated

16

for the benefit of creditors?  As the Trustee became familiar with this case, he not only

discovered the income generated by Brambleton Group, LLC, he discovered that, starting around

2007, Debtor's daughter, Tracey Katzen, formed multiple LP's and LLC's to engage in real

estate development.  The LP's and LLC's are all operated from the same address where Debtor

has always operated his businesses, 23370 Commerce Drive, Farmington Hills, Michigan.

Tracey Katzen is the resident agent for most, if not all, of these entities.  All the companies share

the same bookkeeper, and the legal work for the companies is done primarily by Elias & Elias,

the same firm that has represented Debtor for all periods relevant to this Opinion.

After looking at this picture of Debtor's financial affairs, the Trustee has drawn the

conclusion that, for almost two decades, Debtor has used Lontray and other corporate entities to

control his real estate businesses.  To the extent there have been profits from these businesses,

his children have been the beneficiaries.  Outside of bankruptcy, it is not uncommon for

businesses to operate their affairs through family owned corporations and little transparency may

be required.  Inside bankruptcy, however, total transparency about income and assets is required.

It is the Chapter 7 Trustee's statutory obligation to find all of a debtor's assets and sources of

income and, if those assets have value, liquidate those assets for the benefit of creditors.

Because Debtor has been unwilling to fully disclose the scope of his assets, or fully explain how

he funded his real estate ventures over the last two decades, the Trustee had to file this

Complaint.  The question before the Court today is whether some or all of the Counts in the

Amended Complaint are so lacking in merit that they must be dismissed.

Defendants have filed four separate motions to dismiss.  Each motion addresses different

counts of the Amended Complaint and different Defendants. The motions filed by Lontray

(Counts I-IV) and Sandra Glieberman (Counts XVIII and XIX) address discrete Counts of the Complaint, whereas there is some overlap between the Motion to Dismiss filed by Lonie Glieberman and Tracey Katzen. For organizational purposes, the Court will address the motions to dismiss collectively and apply the standard for dismissal to each count of the Complaint.

C.    <u>The Standard for Dismissal as Applied to the Trustee's First Amended Complaint</u>.

    1.    <u>Counts I-IV Against Lontray Enterprises, LLC</u>

Defendant Lontray Enterprises, LLC is an entity formed by Debtor in 1999. Lontray was initially formed, at least in part, to fund a real estate venture called Brambleton Group, LLC. Lontray has a 15% interest in Brambleton Group, LLC. The Trustee alleges that, over the last nineteen years, millions of dollars have flowed from Brambleton Group, LLC to Lontray, from Lontray to Debtor's children, Lonie Glieberman and Tracey Katzen, and from Debtor's children back to Debtor.

Plaintiff's First Amended Complaint contains four counts concerning Lontray. Count I alleges that Lontray is the alter ego of Debtor Bernard Glieberman or, in the alternative, that the Trustee may pierce the corporate veil and attach the assets of Lontray. Count II seeks turnover of Lontray's assets under 11 U.S.C. §§ 541 and 542. Count III seeks substantive consolidation of Lontray and Debtor. Count IV objects to Lontray's filed proof of claim (Claim No. 15).

This Court finds that the Trustee's Complaint has pled sufficient facts to defeat a motion to dismiss with regards to Counts I through IV. In Count I, the Trustee seeks a ruling that Lontray is an alter ego of Debtor, and then requests that the Trustee be permitted to pierce the corporate veil so that he may attach Lontray's assets for the benefit of Debtor's creditors.

18

Corporations are treated as separate and distinct legal entities from their shareholders. However, the distinction between a corporation and its stockholders "is a convenience introduced in the law to subserve the ends of justice. When this fiction is invoked to subvert justice, it is ignored by the courts." *In re Teleservices Group, Inc. v. Huntington Nat'l Bank (In re Teleservices Group, Inc.)*, 469 B.R. 713, 728 (Bankr. W.D. Mich. 2012) quoting *Wells v. Firestone Tire and Rubber Co.,* 364 N.W.2d 670, 674 (Mich. 1984). In plain English, if an individual uses a corporate entity to perpetrate a fraud, that entity will be treated as an alter ego of the individual. "When the notion of a corporation as a legal entity is used to defeat public convenience, justify wrong, protect fraud or defend crime, that notion must be set aside and the corporation treated as the individuals who own it." *Kline v. Kline,* 305 N.W.2d 297, 299 (Mich.App. 1981) citing *Paul v. University Motor Sales Co.*, 278 N.W. 714, 720 (Mich. 1938). "As such, a court sitting in equity 'may look through the veil of corporate structure' - that is, pierce the corporate veil - 'to avoid fraud or injustice.'" *Green v. Ziegelman*, 873 N.W.2d 794, 803-4 (Mich. App. 2015) citing *Kline v. Kline,* 305 N.W. 2d 297, 299 (Mich. App. 1981).[5]

Count III of the Trustee's Complaint seeks relief similar to the relief requested in Count I. In Count III, the Trustee seeks substantive consolidation of Debtor's assets with those of Lontray. Substantive consolidation is another legal theory which would permit the Trustee to treat the assets of Debtor and Lontray as a single pool of assets. *See, Simon v. New Center Hospital (In re New Center Hospital)*, 179 B.R. 848, 853 (Bankr. E.D. Mich. 1994).

The Second Circuit has set forth the following factors to be considered for substantive

---

[5]Federal Courts look to state law for purposes of determining whether an entity is an alter ego and whether the corporate veil should be pierced. *Bodenhamer Bldg. Corp. v. Architectural Research Corp.,* 873 F.2d 109 (6th Cir. 1989); *see also, In re Brentwood Golf Club, LLC,* 329 B.R. 802, 808 (Bankr. E.D. Mich. 2005).

consolidation:

1. Presence or absence of consolidated business or financial records;

2. The unity of interest and ownership between the entities;

3. The commingling of assets and business functions;

4. The existence of transfers of assets without observance of corporate or other legal formalities;

5. The existence of parent or inter-corporate guarantees or loans;

6. The degree of difficulty in segregating and ascertaining separate assets and liabilities; and

7. The profitability of consolidation at a single location.

*Union Savings Bank v. Augie/Restivo Baking Co., Ltd., (In re Augie/Restivo Baking Co., Ltd.)*,

860 F.2d 515, 518 (2d Cir.1988)

The Sixth Circuit has not adopted a specific test for determining whether entities may be substantively consolidated. *Paris v. Walker* (*In re Walker*), 566 B.R. 503, 525-6 (Bankr. E.D. Tenn. 2017). In *In re Baker & Getty Financial Servs.* case, the Sixth Circuit addressed the issue of substantive consolidation in *dicta*, stating:

> Substantive consolidation is employed in cases where the interrelationships of the debtors are hopelessly obscured and the time and expense necessary to attempt to unscramble them is so substantial as to threaten the realization of any net assets for all of the creditors. In any consolidated case, there is implicit in the Court's decision to consolidate the conclusion that the practical necessity of consolidation to protect the possible realization of any recovery for the majority of the unsecured creditors far outweighs the prospective harm to any particular creditor.
>
> Thus, when a case is substantively consolidated, the Order for consolidation is, in effect, a determination by the Court that consolidation is warranted by the circumstances of the cases and that it is in the best interest of unsecured creditors to join the assets and liabilities of two debtors. It is, in effect, a statement by the Court that the assets and liabilities of one debtor are substantially the same assets and liabilities of the second debtor ...

20

*First Nat'l Bank of Barnesville v. Rafoth (In re Baker & Getty Financial Servs., Inc.)*, 974 F.2d 712, 720 (6th Cir. 1992) citing *In re Evans Temple Church of God in Christ & Community Ctr., Inc.*, 55 B.R. 976, 981–2 (Bankr. N.D.Ohio 1986); *Brentwood Golf Club,* 329 B.R. at 809 citing *Charles E. Austin v. Secretary of State*, 32 N.W.2d 694 (Mich. 1948)("the separate existence of ... two corporations will be ignored and both will be regarded as one where they are so organized and carried on that one is a mere instrumentality or agent or adjunct to the other." )

Substantive consolidation allows the assets and liabilities of two or more entities to be joined into a common fund of assets and creates a single body of creditors. *New Center Hospital*, 179 B.R. at 853. The purpose of the substantive consolidation is the equitable distribution of a debtor's property among all of its creditors. *Id.*

In the Amended Complaint, the Trustee sets forth multiple facts which support the Trustee's request that Lontray be treated as an alter ego of Debtor or, in the alternative, be substantively consolidated with Debtor. Specifically, the Trustee details: (1) how Debtor used Lontray to funnel profits from one business venture to his other real estate ventures. (Amended Complaint, ¶¶ 40-47 and 57-101); (2) how Debtor gave Lontray a security interest in a valuable asset (stock in the company known as Digim or Digital Image, LLC[6] to prevent creditors from attaching that asset. (Amended Complaint, ¶¶ 102-114); (3) how Debtor directed Lontray to write checks to Tracey Katzen, which she immediately endorsed over to either Debtor or Debtor-owned entities (Amended Complaint, ¶¶ 131-140); (4) how, between 2007 and 2015, Lontray made distributions of $22,500,000 to Tracey Katzen and Lonie Glieberman, with the intention of

---

[6]For more details regarding this transaction, see this Court's Opinions Denying Defendants' Motion for Partial Judgment on the Pleadings in Adv. Proc. 15-5382, Docket Nos. 81 and 82.

keeping those funds from creditors (Amended Complaint, ¶¶ 40-44 and 121-123); and (5) how Debtor directed Lontray to funnel money to Tracey Katzen for the purpose of having Tracey Katzen pay off Debtor's first mortgage and other bills, and how Debtor granted Tracey Katzen first and second mortgages against the Bay Harbor condominium as "consideration" for Tracey Katzen using the funds received from Lontray to pay Debtor's bills. (Amended Complaint, ¶¶ 145-154).

Most of the allegations made in the above-referenced paragraphs are supported by references to specific documents, including tax documents, bank records and checks. The detail in the Amended Complaint with regards to Lontray is sufficient for the Court to find that the allegations are well pled. This Court must accept all well pled allegations as true. If all the allegations are true, the Trustee could prevail on his claim that Lontray is an alter ego of Debtor, or that assets of Lontray should be consolidated with those of Debtor. The allegations set forth in the Trustee's Complaint raise the Trustee's right to relief under either an alter ego or substantive consolidation theory far above the speculative level. Therefore, Lontray's Motion to Dismiss Counts I and III of Plaintiff's Complaint is DENIED.

Count II of Plaintiff's Amended Complaint seeks the turnover of Lontray's assets. Under the Bankruptcy Code, the trustee is tasked with marshaling a debtor's property for the bankruptcy estate. 11 U.S.C. § 542 permits trustees to recover property from a debtor that is being held by a third party. Although not specifically stated in § 542, a turnover action requires a previous determination that the asset to be turned over is property of the debtor's bankruptcy estate. *In re Coomer*, 375 B.R. 800, 803-804 (Bankr. N.D. Ohio 2007) *citing In re Sims*, 278 B.R. 457, 475 (Bankr. E.D. Tenn. 2002)("fundamental to the concept of "Turnover" is that the

asset to be turned over must be property of the debtor's bankruptcy estate."). Because this Court may rule that the assets of Lontray are property of the estate, Court II of Plaintiff's Complaint states a plausible claim upon which relief could be granted. Defendant Lontray's Motion to Dismiss Count II of Plaintiff's Complaint is DENIED.

Count IV of Plaintiff Trustee's Complaint seeks to disallow Lontray's proof of claim.[7] Lontray filed a proof of claim in the amount of $14,031,551.26. The claim arises out of loans allegedly made by Lontray to Debtor. The Trustee argues that, if this Court determines that Lontray is an alter ego of Debtor, Lontray's claim must be disallowed. ( Fed. R. Bankr. P. 3007(b)). This Court agrees with the Trustee that, if the Court finds that Lontray is an alter ego of Debtor, Lontray's claim must be disallowed. Since Count IV of the Complaint states a claim for relief that is plausible on its face, Lontray's motion to dismiss Count IV of Plaintiff's Amended Complaint is DENIED.

Lontray has also argued that Counts I - IV must be dismissed because Lontray was formed in 1999, and therefore claims against Lontray are barred by the statute of limitations. The Court disagrees. The Trustee is seeking to have Lontray, and any assets owned by Lontray, treated as an alter ego of Debtor. If Lontray (or any other Defendants) are found to be alter egos of Debtor, the statute of limitations expands to allow a Trustee to recover all assets transferred by Debtor to his alter ego, regardless of the timing of the transfer. *See, Searcy v. Knight (In re American Int'l Refinery)*, 402 B.R. 728, 745 (Bankr. W.D. La. 2008) and *Freelife Int'l, LLC v. Butler (In re Butler)*, 377 B.R. 895, 919-20 (Bankr. D. Utah 2006). In this case, if Lontray is found to be Debtor's alter ego, no statute of limitations would apply to limit recovery of assets

---

[7]Pursuant to Fed. R. Bankr. P. 3007(b), an objection to the allowance of a claim may be raised as part of an adversary proceeding.

23

from Lontray. There is no statute of limitations which provides grounds for dismissing the Trustee's claims against Lontray.

<ol start="2" type="1">
<li>Standard for Dismissal as Applied to Fraudulent Transfer Claims Against Lonie Glieberman and Tracey Katzen (Count V, VII, XX and XXI)</li>
</ol>

In Counts V and VII, the Trustee asserts that Tracey Katzen and Lonie Glieberman were the recipients of fraudulent transfers from Debtor. The Trustee argues that Debtor funneled money through Lontray to Lonie Glieberman and Tracey Katzen, and that Debtor received no consideration for the transfers. The Trustee seeks relief under state law, specifically MCL 566.34 and MCL 566.35.

In Counts XX and XXI of the Amended Complaint, the Trustee alleges that, under both state and federal statutes, Debtor used defendant Londonberry Residential, LLC to fraudulently transfer money to his daughter, Tracey Katzen.

11 U.S.C. § 548 sets forth the elements necessary to establish a fraudulent transfer claim under the Bankruptcy Code. Section 548 states:

> (a) (1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> > (A)  made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
> >
> > (B)  (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> >
> > (ii)(I) was insolvent on the date that such transfer

24

was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

The Michigan Uniform Voidable Transfers Act "was designed to protect unsecured creditors against debtors who make transfers out of, or make obligations against, the debtor's estate in a manner adverse to the creditors' rights." *Multi–Grinding, Inc. v. Richardson Sales & Consulting Servs., Inc.*, 2004 WL 1335813 at *2 (Mich.App.), *citing Nicholas Loan & Mortgage, Inc. v. W. Va. Coal Co–Op, Inc.*, 547 S.E.2d 234 (W. Va. 2001), discussing the Uniform Fraudulent Transfers Act, § 3, comment 2.

Mich. Comp. Laws § 566.34(1) sets forth the elements of actual and constructive fraud under state law. Mich. Comp. Laws § 566.34 provides:

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following:

(a) With actual intent to hinder, delay, or defraud any creditor of the debtor.

(b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor did either of the following:

(i) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

(ii) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

MCL § 566.35(1) states, in relevant part:

A transfer made or obligation incurred by a debtor is voidable as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a

25

reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

The Trustee's Amended Complaint sets forth allegations which support a fraudulent transfer action against Tracey Katzen and Lonie Glieberman based on the money funneled to them through Lontray. The Amended Complaint alleges that between 1999 and 2015, Debtor used Lontray to distribute $22 million to his children, Tracey Katzen and Lonie Glieberman, and that Debtor received nothing in return. (Amended Complaint, ¶¶ 43, 67, 121-123). The Amended Complaint further alleges that Debtor was insolvent at the time he was funneling money through Lontray to Tracey Katzen and Lonie Glieberman. (Amended Complaint, ¶¶ 237, 251). The Court finds these allegations sufficient to state a fraudulent transfer claim that is plausible on its face. Tracey Katzen's and Lonie Glieberman's Motions to Dismiss Counts V and VII are DENIED.

In Counts XX and XXI, the Trustee alleges that, under state and federal law, Debtor used Londonberry Residential, LLC to fraudulently transfer money to Tracey Katzen. Londonberry Residential, LLC is the management company for all the other entities that allegedly were set up by Tracey Katzen. In the Amended Complaint, the Trustee details how, while Tracey Katzen did not perform any services for Londonberry, income from Londonberry flowed into her bank account and then flowed out again in payment of Debtor's personal expenses. (Amended Complaint, ¶¶ 159-183). The Amended Complaint also alleges that Debtor was insolvent at the time he was using Londonberry to funnel money to himself or Tracey Katzen. (Amended Complaint, ¶¶ 374, 388).

These allegations are sufficient to state a cause of action against Tracey Katzen to

recover the money that flowed into her bank account as a fraudulent transfer.  The Trustee's allegations are sufficient to state a claim for relief that is plausible on its face.  Tracey Katzen's Motion to Dismiss Counts XX and XXI is DENIED.

The motions to dismiss also argue that the statute of limitations requires dismissal of some or all of the Trustee's fraudulent transfer claims because they were filed beyond the six year statute of limitations set forth in Mich. Comp. Laws § 566.39(a).  This Court agrees that the six year statute of limitations prevents the Trustee from recovering fraudulent transfers made by Lontray to Tracey Katzen and Lonie Glieberman prior to November 2, 2009.[8]  The Trustee alleges that Lontray transferred money to Tracey Katzen and Lonie Glieberman every year from 2009 to 2015.  Those fraudulent transfer claims are not barred by any statute of limitations.

For all the reasons set forth above, this Court concludes that the Trustee has pled fraudulent transfer claims which survive a motion to dismiss.  Defendants Lonie Glieberman and Tracey Katzen's motions to dismiss Counts V, VII, XX and XXI are DENIED.


3.      Statutory Conversion Claims Against Lonie Glieberman and Tracey Katzen (Counts VI and VIII)

In Counts VI and VIII of the Trustee's Amended Complaint, the Trustee alleges that Lonie Glieberman and Tracey Katzen converted assets that should have been used to pay Debtor's creditors.  The Trustee seeks relief under state law, specifically Mich. Comp. Laws §600.2919(a).   Mich. Comp. Laws § 600.2919a, provides:

_____

[8]Debtor filed for bankruptcy on November 2, 2015.  Pursuant to 11 U.S.C. § 108(a)(2), and 11 U.S.C. § 546(a)(1)(A), a trustee has up to two years after a case is filed to pursue fraudulent transfer actions.  The six year statute of limitations is tolled for that period of time.  Thus, even thought the Trustee commenced this adversary proceeding on October 31, 2017, the Trustee may pursue causes of action back to six years before the date the petition was filed.

(1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:

(a) Another person's stealing or embezzling property or converting property to the other person's use.

(b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.

(2) The remedy provided by this section is in addition to any other right or remedy the person may have at law or otherwise.

When the property allegedly converted is money, case law imposes very specific requirements to establish conversion. In order for there to be a claim for conversion of *money*, one party must have entrusted his money to another party and that party must have taken money which he knew did not belong to him, and converted that money to his own use without the permission of the party who entrusted him with the money. *See, Check Reporting Servs., Inc. v. Michigan Nat'l Bank-Lansing*, 478 N.W.2d 893, 900 (Mich. App. 1991)(conversion requires "an obligation on the defendant's part to return or deliver the specific money entrusted to it"); *Head v. Phillips Camper Sales & Rental, Inc.*, 593 N.W.2d 595, 603 (Mich. App. 1999)("To support an action for conversion of money, the defendant must have had an obligation to return the specific money entrusted to his care"); *Sudden Servs., Inc. v. Brockman Forklifts, Inc.*, 647 F. Supp.2d 811, 815 (E.D. Mich. 2008)("conversion is only applicable in cases involving money that is the property of one party but held by another party (e.g. bank accounts, trusts, etc.) which is then wrongfully taken").

In Count VI and VIII of the Amended Complaint, the Trustee alleges that Tracey Katzen

28

and Lonie Glieberman converted the assets of Lontray for their own use. After carefully

reviewing the Amended Complaint, the Court cannot find any allegations which would support a

cause of action for conversion against Tracey Katzen or Lonie Glieberman. Conversion requires

Tracey Katzen and Lonie Glieberman to have possession of a specific asset of a creditor and to

have knowingly converted that specific asset to their own use. It is undisputed that Lontray

disbursed money to Tracey Katzen and Lonie Glieberman, but the money that flowed into

Lontray came from Debtor and Lontray's business interests. Once the money flowed to Lonie

Glieberman and Tracey Katzen, they had Debtor and Lontray's permission to use the money

however they chose to, or in whatever manner Debtor directed them to do so. The Trustee has

not made any allegations which support a claim of conversion against Tracey Katzen or Lonie

Glieberman. Therefore, this Court GRANTS Defendant Lonie Glieberman and Defendant

Tracey Katzen's motions to dismiss Counts VI and VIII of the Amended Complaint.


4.     Standard of Dismissal as Applied to Counts Relating to the Mortgages Against
       Debtor's Residence and the Bay Harbor Condominium (Counts XII, XIII, XIV,
       XV and XVI).

In Counts XII, XIV and XV of the Amended Complaint, the Trustee seeks a declaratory

judgment that the mortgages granted to Tracey Katzen (against Debtor's residence and the Bay

Harbor condominium) and Lonie Glieberman (against the Bay Harbor condominium) are void.

The Trustee's legal theory is that the mortgages were granted as gifts from Debtor to Tracey

Katzen and Lonie Glieberman, rather than in exchange for valuable consideration, and, therefore,

there is no obligation owed by Debtor to Tracey Katzen or Lonie Glieberman.

Under Michigan law, a "mortgage instrument, without any debt, liability or obligation

secured by it, can have no present legal effect as a mortgage or an [e]ncumbrance upon the land."
*Ladue v. Detroit & Milwaukee RR Co.*, 13 Mich. 380, 394-5 (1865). *See also, Fifth Third Bank v. Danou Tech. Park*, 2012 WL 933983, *6 (Mich.App. 2012)(where an underlying note was paid in full – even with a form of payment not contemplated in the note – the associated mortgage "ceased to exist as a matter of law"); *Byles v Kellogg*, 34 N.W. 671, 672 (Mich. 1887)(no valid mortgage where underlying note has been paid). In the case of *Ganong v. Green*, 38 N.W. 661, 667-8 (Mich. 1888), the Michigan Supreme Court specifically held that a mortgage granted by a father to a son without consideration, in order to shield his property from his creditors, is not a valid mortgage.

The allegations set forth in the Trustee's Amended Complaint are sufficient to defeat motions to dismiss Counts XII, XIV and XV. In the Amended Complaint, the Trustee details how Tracey Katzen obtained her mortgage against Debtor's residence. Specifically, in October 2009, Debtor signed checks on the Lontray bank accounts, payable to Tracey Katzen in the total amount of $436,000. Tracey Katzen subsequently endorsed each check over to other Debtor-controlled entities. In exchange for Tracey Katzen endorsing the checks over to other Debtor-controlled entities, she was granted a mortgage in the amount of $500,000 against the residence. (Amended Complaint, ¶¶ 128-144). No payments have ever been made on the mortgage. (Amended Complaint, ¶ 143).

The Trustee also alleges that Tracey Katzen obtained the first mortgage and second mortgage on the Bay Harbor condominium by using funds received from Lontray. Specifically, the Amended Complaint alleges that, in December 2007, Debtor directed Lontray to write Tracey Katzen a check for $125,000. Tracey Katzen subsequently endorsed the check over to

30

Elias & Elias for "legal fees". On January 16, 2008, Debtor and his wife Sandra granted Tracey Katzen a second mortgage against the Bay Harbor condominium, allegedly as consideration for the payment of the Elias & Elias bill. (Amended Complaint, ¶ 153, 154). Tracey Katzen obtained an assignment of the first mortgage on August 27, 2012 by using funds received from Lontray to pay off Debtor's first mortgage with New York Community Bank. (Proof of Claim No. 25, Exhibit B). Both the first and second mortgages were subsequently assigned to Lonie Glieberman. (Amended Complaint, ¶¶ 145-152, 155).[9]      No payments have ever been made to either Tracey Katzen or Lonie Glieberman on either the first or second mortgages (Amended Complaint, ¶ 157, 158).

In Counts XII, XIV, and XV, the Trustee alleges that the mortgages granted to Tracey Katzen and Lonie Glieberman are void because the mortgages were granted as gifts, rather than for actual monetary consideration. The allegations set forth in paragraphs 128-158, if accepted as true, support the Trustee's claims that the mortgages granted to Tracey Katzen or Lonie Glieberman are void. Therefore, Defendants Tracey Katzen's and Lonie Glieberman's motions to dismiss Counts XII, XIV and XV are DENIED.

Count XIII of the Trustee's Amended Complaint is an objection to Tracey Katzen's proof of claim. On March 27, 2017, Tracey Katzen filed a secured claim in the amount of $1,141,354.94. (Proof of Claim No. 26). Tracey Katzen's claim is based on the mortgage on the West Bloomfield residence granted to Tracey Katzen by Debtor and his wife, and seeks repayment of the original mortgage amount, plus interest on all the unpaid mortgage payments.

Count XVI of the Amended Complaint is an objection to Lonie Glieberman's proof of

---

[9]A more specific statement of these facts is set forth in this Court's Bench Opinion issued on August 22, 2017. *See*, Transcript, at 64-70. (Docket No. 437).

claim. On March 13, 2017, Lonie Glieberman filed a Proof of Secured Claim in the amount of $727,010.96. (Proof of Claim No. 25). The claim is based on the mortgages against the Bay Harbor condominium assigned to Lonie Glieberman by Tracey Katzen. The claim seeks recovery of the original mortgage amounts plus unpaid interest and mortgage payments.

Plaintiff Trustee argues that, if this Court finds that the mortgages held by Tracey Katzen and Lonie Glieberman are void, that ruling would result in the disallowance of Tracey Katzen's and Lonie Glieberman's claims. The Court agrees. Because the Trustee's allegations are sufficient to state a plausible claim that Lonie Glieberman's and Tracey Katzen's claims will be disallowed, Tracey Katzen's and Lonie Glieberman's motions to dismiss are DENIED as to Counts XIII and XVI.

5. <u>The Standard for Dismissal as Applied to the Trustee's Claims Against the Katzen Entities and the John Doe Entities (Counts IX, X and XI)</u>

In Counts IX, X and XI, the Trustee's Amended Complaint seeks a determination that multiple entities, for which Tracey Katzen is either the resident agent, the incorporator, or the partner, are either alter egos of Debtor or need to be substantively consolidated with Debtor's bankruptcy estate. A short summary of the law on alter ego, piercing the corporate veil, and substantive consolidation is set forth on pages 18-21, *supra*, under the discussion of the Trustee's causes of action against Lontray.

In the Trustee's Amended Complaint, the Trustee alleges that, in approximately 2007, Tracey Katzen began filing Articles of Incorporation and Certificates of Limited Partnership for multiple entities and listed herself as resident agent or partner. (Amended Complaint, ¶¶ 47-51 and 159-183). These entities are referred to by the Trustee as the "Katzen Entities." The Katzen

Entities appear to share a common address, bookkeeper and lawyers. The Trustee asserts that all these entities are, in reality, controlled by Debtor and, therefore, should be treated either as alter egos of Debtor or be substantively consolidated with Debtor's bankruptcy estate.

The allegations set forth in paragraphs 47-51 and 151-183 of the Trustee's Amended Complaint are sufficient to support a claim that the Katzen Entities, and any as yet undiscovered John Doe Entities, are mere instrumentalities of Debtor, and that Debtor has placed these entities in his daughter's name for the purpose of hiding assets from creditors. The Trustee's pleadings set forth a plausible claim for either substantive consolidation or piercing the corporate veil. The motion to dismiss Counts IX and XI is DENIED.

Count X of the Trustee's Amended Complaint seeks turnover of the assets of the Katzen Entities and the John Doe Entities. The statutory requirements for turnover are set forth above on page 22-23, *supra*, in the discussion of the Trustee's claims against Lontray. If the Court grants the relief requested by the Trustee in Counts IX and XI of the Trustee's Amended Complaint, any assets of the Katzen Entities and the John Doe Entities will become property of Debtor's bankruptcy estate. At that point, the Entities would be required to turn over their assets to the Trustee. Since this Court may conclude that the assets held by the Katzen Entities and the John Doe Entities are property of Debtor's bankruptcy estate, Count X of the Complaint states a plausible claim for relief. The motion to dismiss Count X is DENIED.

6.      Standard for Dismissal as Applied to Claims Against Sandra Glieberman (Counts XVIII and XIX)

Defendant Sandra Glieberman is Debtor's wife. In the Amended Complaint, the Trustee seeks authority to sell Sandra Glieberman's interest in their residence (Count XVIII) and the Bay

33

Harbor condominium (Count XIX). Debtor and Sandra Glieberman own their residence and the

Bay Harbor condominium as tenants by the entireties. Generally, property owned by the

entireties cannot be liquidated to satisfy the claims of a creditor of only either the husband or the

wife. *Liberty State Bank and Trust v. Grosslight (In re Grosslight)*, 757 F.2d 773, 774-776 (6th

Cir. 1985). The Bankruptcy Code provides, however, that under certain circumstances, the

Trustee may liquidate entireties property for the benefit of a debtor's creditors. 11 U.S.C.

§363(h) states, in relevant part:

> Notwithstanding subsection (f) of this section, the trustee may sell both the
> estate's interest, under subsection (b) or (c) of this section, and the interest of any
> co-owner in property in which the debtor had, at the time of the commencement
> of the case, an undivided interest as a tenant in common, joint tenant, or tenant by
> the entirety, only if –
>
> > (1) partition in kind of such property among the estate and such co-owners
> > is impracticable;
> >
> > (2) sale of the estate's undivided interest in such property would realize
> > significantly less for the estate than sale of such property free of the
> > interests of such co-owners;
> >
> > (3) the benefit to the estate of a sale of such property free of the interests
> > of co-owners outweighs the detriment, if any, to such co-owners; and
> >
> > (4) the property is not used in the production, transmission, or distribution,
> > for sale, of electric energy or of natural or synthetic gas for heat, light, or
> > power.

The burden of proof for actions under § 363(h) rests with the movant. *Sapir v Sartorius*,

230 B.R. 650, 655 (S.D.N.Y. 1999). Once the movant presents his *prima facie* case that the

estate would benefit from the sale, the burden shifts to the opponent of the sale to show facts

why the sale should not be approved. *Id.* As set forth in the *Sapir* opinion,

> the party with the burden of proof has the burden of going forward and making
> out a prima facie case, the other party has the burden of rebutting that prima facie

case, and the party with the burden of proof . . . must ultimately persuade the trier
of fact by a preponderance of the credible evidence.

*Id*. at 656. *See also, In re Grabowski v. Sapir (In re Grabowski)*, 137 B.R. 1, 3 (S.D.N.Y.), *aff'd ,*

970 F.2d 896 (2d Cir. 1992).

If the Trustee is successful in its claim that the mortgages against the residence and the

Bay Harbor condominium are void, these properties will both be owned free and clear by Debtor

and his wife.  If the properties are owned free and clear by Debtor and his wife, the Trustee has a

strong probability of satisfying all of the elements of a cause of action to sell those properties

under 11 U.S.C. § 363(h).  Since the allegations set forth by the Trustee in Counts XVIII and

XIX are sufficient to support a claim for relief that is plausible on its face, Defendant Sandra

Glieberman's Motion to Dismiss Counts XVIII and XIX is DENIED.

 

       7.      <u>Standard for Dismissal as Applied to Trustee's Request that the Claims of Lonie
              Glieberman and Tracey Katzen be Equitably Subordinated to the Claims of Other
              Creditors (Count XVII)</u>

In Count XVII of the Trustee's Amended Complaint, the Trustee requests that, if the

claims of Tracey Katzen and Lonie Glieberman are allowed, those claims be equitably

subordinated to the claims of Debtor's other creditors.

The Bankruptcy Code, 11 U.S.C. § 510(c) provides for the equitable subordination of

claims.  That section states:

Notwithstanding subsection (a) and (b) of this section, after notice and a hearing,
the court may –

      (1) under principles of equitable subordination, subordinate
      for purposes of distribution all or part of an allowed claim
      to all or part of another allowed claim or all or part of an
      allowed interest to all or part of another allowed interest; or

(2) order that any lien securing such a subordinated claim
be transferred to the estate.

The legal standard for establishing equitable subordination was set forth by the United

States Supreme Court in *U.S. v. Noland*, 517 U.S. 535 (1996) and in *Bayer Corp. v. MascoTech,*

*Inc. (In re Autostyle Plastics, Inc.)*, 269 F.3d 726, 744-5 (6th Cir. 2001). The Supreme Court

listed as prerequisites for the application of equitable subordination:

(1) The claimant must have engaged in some type of inequitable conduct;

(2) The misconduct must have resulted in injury to the creditors of the
bankrupt, or conferred an unfair advantage on the claimant; and

(3) Equitable subordination of the claim must not be inconsistent with the
provisions of the Bankruptcy Code.

*Noland,* 517 U.S. at 538 (*citing Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692

(5th Cir. 1977). *See also, Baker & Getty Financial Servs.*, 974 F.2d at 717-718. As explained

by the Sixth Circuit,

The legal standard in applying this test varies depending on whether the
creditor is an insider or a non-insider. . .

The primary distinctions between subordinating the claims of insiders
versus those of non-insiders lie in the severity of the misconduct required
to be shown, and the degree to which the court will scrutinize the
claimant's actions toward the debtor or its creditors. Where the claimant
is a non-insider, egregious conduct must be proven with particularity. It is
insufficient for the objectant in such cases merely to establish sharp
dealing; rather he must prove that the claimant is guilty of gross
misconduct tantamount to 'fraud, overreaching or spoliation to the
detriment of others.' Where the claimant is an insider, his dealing with the
debtor will be subjected to more exacting scrutiny.

*In re Baker & Getty*, 974 F.2d at 718 (citation omitted).

It is undisputed that Tracey Katzen and Lonie Glieberman are insiders. Tracey Katzen

and Lonie Glieberman have filed claims to recover on mortgages for which they allegedly

provided no consideration out of their own personal funds. (Amended Complaint, ¶¶ 128-158). They allegedly took money from Lontray whenever they chose to, without considering whether any creditors should have been paid prior to taking the distributions. (Amended Complaint, ¶¶ 121-123). Tracey Katzen paid bills for her father with money distributed from Lontray or paid to her by Londonberry. (Amended Complaint, ¶ 328). These allegations all demonstrate conduct that supports the Trustee's requested relief that Tracey Katzen's and Lonie Glieberman's claims be equitably subordinated. Tracey Katzen and Lonie Glieberman's Motions to Dismiss Count XVII of the Amended Complaint are DENIED.

8. <u>Miscellaneous Counts Relating to the Avoidance of Preferential Transfers to Tracey Katzen and the Recovery of a Mercedes Benz (Counts XXII and XXIII)</u>

In Count XXII of the Amended Complaint, the Trustee alleges that, within one year prior to the filing of bankruptcy, Londonberry Residential, LLC, an entity which the Trustee alleges is controlled by Debtor, made preferential transfers to Tracey Katzen. 11 U.S.C. § 547(b) allows the Trustee to recover transfers to insiders one year before the filing of the bankruptcy if the transfer is a transfer of an interest of the debtor in property:

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made –

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the

> filing of the petition, if such creditor at the time of such transfer was an insider; and

> (5) that enables such creditor to receive more than such creditor would receive if–

> > (A) the case were a case under chapter 7 of this title;

> > (B) the transfer had not been made; and

> > (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

After carefully reviewing the Trustee's Amended Complaint, the Court cannot find a single allegation that would support a finding that Tracey Katzen was, or is, a creditor of Londonberry. As discussed above, Tracey Katzen may have been the recipient of fraudulent transfer from Londonberry, or she may have performed some services for Londonberry, but there is not a single allegation explaining how Tracey Katzen could be a creditor of Londonberry. A preferential payment may only be recovered from a creditor of a debtor. Because the Trustee's Amended Complaint does not state sufficient facts to establish a preferential transfer action against Tracey Katzen, Tracey Katzen's Motion to Dismiss Count XXII is GRANTED.

In Count XXIII of the Amended Complaint, the Trustee seeks to avoid Debtor's transfer of a 2003 Mercedes Benz to Defendant TK001. The Trustee asserts that the transfer is a fraudulent transfer under Mich. Comp. Laws §§ 566.34 and 566.35.

The law regarding fraudulent transfer is set forth above on pages 24-26, *supra*. This Court finds that the Trustee has set forth allegations sufficient to defeat a motion to dismiss Count XXIII. The Trustee's Amended Complaint alleges that, on June 21, 2012, Debtor transferred an interest in a 2003 Mercedes Benz to Defendant TK001 for no consideration. The Mercedes Benz is parked at the same address as the address of all the Katzen Entities. (Amended

Complaint, ¶¶ 20, 192-194, 196). These allegations are sufficient to support a claim for recovery of the Mercedes Benz as a fraudulent transfer. Tracey Katzen's and the Katzen Entities' Motion to Dismiss Count XXIII of the Complaint is DENIED.

III.

<u>CONCLUSION</u>

For the reasons set forth above: (1) Lontray's Motion to Dismiss is DENIED in its entirety (Counts I-IV); (2) Sandra Glieberman's Motion to Dismiss is DENIED in its entirety (Counts XVIII and XIX); (3) Lonie Glieberman's Motion to Dismiss is DENIED as to Counts V, XIV, XV, XVI, and XVII; Lonie Glieberman's Motion to Dismiss is GRANTED as to Count VI; (4) Tracey Katzen's and the Katzen Entities' Motion to Dismiss is DENIED as to Counts VII, IX, X, XI, XII, XIII, XIV, XVII, XX, XXI and XXIII; Tracey Katzen's and the Katzen Entities' Motion to Dismiss is GRANTED as to Counts VIII and XXII.

Defendants are not required to file Answers to the Trustee's First Amended Complaint until further order of the Court.

**Signed on June 06, 2018**



**/s/ Marci B. McIvor**
**Marci B. McIvor**
**United States Bankruptcy Judge**